[Civ. No. 5370. Fourth Dist. Mar. 25, 1957.]

ARTHUR SCHERTZ, Respondent, v. RECORD MACHINE AND TOOL COMPANY (a Corporation) et al., Appellants.

Montgomery G. Rice for Appellants.

Dorris, Fleharty, Phillips & Underhill and Dorris, Fleharty & Underhill for Respondent.

BARNARD, P. J.—This is an action to recover the amount paid by the plaintiff as partial payment for a one-fourth interest in the defendant corporation, including its stock, assets and business. All dealings in this connection occurred between the plaintiff and the defendant Baker, who was president of the corporation and who was carrying on its business.

This action was brought on July 9, 1954. The amended complaint alleged that about December 8, 1950, the plaintiff paid to the defendants $10,000 on an oral agreement that this was to be in partial payment for one-fourth of the shares of stock in the corporation and for a one-fourth interest in the property and assets of the corporation, and that said agreement was evidenced by the following writing:

"December 8, 1950

"Mr. Arthur Schertz:

"We have a verbal agreement as of buying one fourth interest in this business and property.

"I want you to try it out to your satisfaction for 90 (ninety) days before you are committed, then if for any reason you wish to resign, I would require 2 (two) years to pay back the money ($10,000.00) as a loan on the company. If you decide you wish to go on with our agreement you will be required to raise the balance of $15,000 to complete our bargain of one quarter interest. This should be an advantage to us both.

"Carl Baker, Pres.
"Record Machine & Tool Co."

It was further alleged that the consideration was to be $25,000; that the plaintiff was to pay $10,000 in cash and to convey to the defendants a house and lot in Taft at the agreed value of $15,000; that the plaintiff has been at all times ready, able and willing to perform on his part but the defendants, while accepting and retaining $10,000 cash, have refused to accept a written transfer of the house and lot; that the defendants never issued and delivered to the plaintiff the said one-fourth of the stock of the corporation, have never applied to the Corporation Commissioner for a permit for the issuance of such stock, and the Corporation Commissioner has never issued such a permit; that the defendants thereby became indebted to the plaintiff in the sum of $10,000 with interest thereon; that said sum has not been paid except for certain credits set forth; and that there is now due, owing and unpaid the sum of $11,881.36. The prayer is that the plaintiff have judgment for that amount.

The amended answer of the defendants admitted that the corporation had never issued or applied for the right to issue any shares of stock to the plaintiff, and alleged that the action was barred by section 339 of the Code of Civil Procedure. As affirmative defenses it was alleged that the defendants had a conditional sales contract for the purchase from another corporation of certain buildings, machinery and patents; that the plaintiff paid this $10,000 for an option giving him the right for a period of 90 days to acquire a one-fourth interest in that conditional sales contract, by paying the further sum of $15,000, and providing that in the event he elected not to pay the $15,000 he would be deemed to have loaned the $10,000 to the defendants for the term of two years from that date; that on or about January 1, 1952, the plaintiff notified the defendants of his decision not to pay the $15,000 and complete his purchase of an interest in the sales contract; that on or about January 1, 1952, it was "agreed between the parties" that the defendants had made certain payments which "should be credited to defendants on the loan from plaintiff, and that the balance due on said loan as of January 1, 1952, was $9680"; that as of January 1, 1952, the defendants executed and delivered to the plaintiff two notes, each dated that day and due in two years with interest; that the first note was for $5,000 and the second for $4,680; that the second contained the provision that $60 per month should be paid thereon; that by the delivery and acceptance of said notes the obligation of December 8, 1950, was fully paid and extinguished; that subse-

quently the defendants made certain payments to the plaintiff on the second note amounting to $1,140; and that the defendants had overpaid the plaintiff for certain work in the sum of $2,009.11 and it was orally agreed between the parties that this sum should be applied on the amount due on said notes. The prayer was that the plaintiff take nothing by reason of this action.

The trial of the action took two days. The defendant Baker was in court but did not take the stand. The defendants cross-examined the plaintiff at great length but called no witness in their behalf. A large number of written exhibits were received in evidence, none of which have been brought up on this appeal except for the writing dated December 8, 1950, which is above quoted.

The court found, among other things, that in December, 1950, these parties entered into an oral agreement which was evidenced by the writing above quoted, whereby the defendants agreed to sell the plaintiff a one-fourth interest in this corporation for a total consideration of $25,000; that thereafter the plaintiff paid and the defendants received $10,000 in cash; that by reason of the neglect, failure and refusal of the defendants, and not otherwise, this agreement was never consummated or completed; that at all times up to March 16, 1952, the plaintiff was ready, willing and able and so offered to perform his part of that agreement; that no application for a permit to issue stock was ever made by the defendants to the Corporation Commissioner, and no stock was ever issued or authorized; that on March 16, 1952, the agreement for the purchase and sale of a one-fourth interest in this business was mutually rescinded and terminated by the parties, and it was agreed that the $10,000 was to be deemed and treated as a loan; that at said time the defendants agreed to repay the $10,000 to the plaintiff with interest at 6 per cent from that date; that thereafter, on December 28, 1952, the defendants executed a document in writing, "being Plaintiff's Exhibit No. 6," whereby the defendants acknowledged said indebtedness and set forth therein certain debits and credits due to and from plaintiff and defendants; that on March 16, 1952, after the making of said agreement that the $10,000 was to be considered as a loan the defendants were entitled to certain credits because of payments made; that after making these credits a total of $9,647.65 is now due, owing and unpaid from the defendants; and that the plaintiff's cause of action is not barred by section 339 of the Code of Civil Procedure.

Judgment was in favor of the plaintiff for $9,647.65, and this appeal followed.

The appellants contend that the amended complaint did not allege facts which were sufficient to state a cause of action against them, and that the cause of action pleaded, no matter how considered, is one based upon an oral contract and is barred by the two-year statute of limitations. It is argued that the amended complaint alleges an oral contract by which the plaintiff agreed to transfer real property; that the allegations as to a contract to "transfer and convey" are too indefinite in that it was not alleged that there was any "outstanding stock," or what property was to be conveyed, or when it was to be conveyed; that it was not alleged that the plaintiff had paid or delivered, or at least tendered, all he was bound to pay or deliver, and it was not alleged that there was a written offer of tender either of money or lot; that the writing of December 8, 1950, did not evidence any oral agreement but was an offer to make a different contract requiring a payment of the $15,000 in cash, in lieu of taking the house and lot as a payment of $15,000; that it is not alleged that this writing of December 8 was ever accepted in writing; that it is not alleged that the plaintiff ever tendered $15,000 in cash; and that the writing of December 8 cannot be enforced as a valid agreement for the transfer of real property since it does not describe any real property.

In contending that upon any theory the plaintiff's cause of action is barred by the two-year statute it is argued that the oral contract pleaded remains an oral contract, even though evidenced by a writing, since it was so indefinite as to necessitate resort to parol testimony to make the contract complete; that if the action is viewed as one for money had and received any implied promise to return the $10,000 is barred by the two-year statute; and that if there was a cancellation and rescission in March, 1952, this action was not brought until more than two years after that date. In the closing brief it is further argued that the plaintiff could not rescind since he was in default after 90 days from December 8, 1950, and since there was no evidence that the defendants were ever in default; and that there was no evidence to support the court's finding that the agreement between the parties was mutually rescinded and terminated on March 16, 1952, or the finding that the parties then agreed that this $10,000 was to be deemed and treated as a loan from plaintiff

to defendants, to be repaid to him with interest at 6 per cent from that date.

The complaint in this action was not one for specific performance or to enforce any contract. Its purpose was obvious, and it clearly appears from the answer that the defendants were in no way deceived as to its purpose and intent. Its effect was to allege that the defendants had received this money which they were not entitled to retain. It alleged that the stock had not been delivered, and that a permit to issue such stock had not been applied for or issued. It sufficiently alleged a cause of action for money had and received, and it cannot be held that the complaint was so deficient as to deprive the court of jurisdiction to proceed with a trial of the issues presented by the pleadings.

It was admitted that the defendants had received the $10,000, that it had not been repaid, and that no permit to issue stock in this corporation had ever been applied for or issued. It also appeared without conflict that the parties had later changed their position by mutual agreement, and that it was thereafter agreed that the plaintiff was entitled to a return of his money except for certain credits to be allowed. The answer admitted that long after the 90-day period was up and "as of January 1, 1952," the parties had agreed that the $10,000 should be considered as a loan and that the balance due as of that date was $9,680. While the answer alleged that the agreement was for the purchase and sale of an interest in another contract, instead of an interest in this corporation and its business, there was no evidence to sustain that allegation. There was ample evidence that the agreement was for the purchase of stock in the corporation and a one-fourth interest in its business and assets. Since no stock had ever been issued and no permit applied for or secured, a judgment based on the theory of money had and received was justified. There was evidence that the defendants took possession of the house and lot, and used it for many months, and that they asked the plaintiff to delay a transfer of title to them. There was also evidence that the defendants were in default, and were never in a position to complete the original deal.

The finding that the agreement for the purchase and sale of a one-fourth interest in this business was mutually rescinded and terminated on March 16, 1952, and that it was then agreed that the $10,000 was to be deemed and treated as a loan, is fully sustained by the evidence. It is supported

by the allegation of the answer to the effect that it had been agreed that this should be a loan and that the balance due on the loan as of January 1, 1952, was $9,680. The testimony of the plaintiff was that this agreement was actually made about March 15 or 16, 1952. The answer alleged that the defendants executed and delivered two notes totaling that amount and that $60 per month was paid thereon for a time. While it was admitted that these notes were executed, there was no evidence that they were delivered or accepted by the plaintiff, although he testified that he saw the notes and saw the amount of one of them about the middle of March, 1952. Not only was there sufficient evidence of a rescission and termination of the original agreement and the making of a new agreement that the $10,000 be considered as a loan, but there was ample evidence of subsequent admissions on the part of the defendants that they owed the money and agreed to pay it. They made payments for many months on what they admitted was a loan. In addition to the testimony of the plaintiff, two statements of account of some sort which were thereafter given to the plaintiff by the defendants, were introduced in evidence. The record indicates that these constituted admissions of the amount due to the plaintiff as of the times they were prepared. The court found with respect to one of these instruments that on December 28, 1952, the defendants executed a document in writing, "being Plaintiff's Exhibit No. 6," whereby and wherein they acknowledge their debt to the plaintiff and set forth figures showing the claimed amount due. ■ Since the defendants did not see fit to have this exhibit brought up it must be assumed, in support of the judgment, that it supported and justified the finding made. (*Kip* v. *Warriner,* 86 Cal.App.2d 814 [195 P.2d 888] ; *Alex Foods, Inc.* v. *Metcalfe,* 137 Cal.App.2d 415 [290 P.2d 646].) ■ There was ample evidence that a new agreement was mutually agreed upon between the parties on or about March 16, 1952, changing the original contract for the purchase and sale of an interest in this business to one providing that the $10,000 paid by the plaintiff was a loan which was to be repaid by the defendants, and that the defendants acknowledged this new obligation as late as December 28, 1952. (*Western Coal & Mining Co.* v. *Jones,* 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685].) The action was brought on July 9, 1954, well within two years after that date. The essential findings of the court are fully sustained by the evidence and the record fails to show any good reason, even on technical grounds, why the defendants

should be relieved from the obligation which they assumed orally and in writing, which they continued to acknowledge, and against which they failed to offer any evidence.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 18, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 22, 1957.